IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MEDICAL TECHNOLOGY AND
INNOVATIONS, INC.,
    Plaintiff,

v.

LENSCRAFTERS, INC., and
LUXOTICA GROUP S.p.A.,
    Defendants.

CIVIL ACTION NO. 1:CV-00-0494
(Judge Kane)

FILED
HARRISBURG
MAR 2 8 2002
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

### MEMORANDUM AND ORDER

Now before the Court are Defendant Luxotica Group S.p.A.'s ("Luxotica") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of personal jurisdiction, and Defendant LensCrafters' motion to compel arbitration and stay this action. The motions have been fully briefed and are ripe for disposition. For the reasons explained below, the motion to dismiss will be denied and the motion to compel arbitration will be granted.

**I    The Motion to Dismiss Luxotica**

This Court may exercise personal jurisdiction to the extent allowed under the laws of the Commonwealth of Pennsylvania. Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 144 (3d Cir. 1993); Fed. R. Civ. P. 4(e). Personal jurisdiction may be extend to anyone who "[c]aus[es] harm or tortious injury in th[e] Commonwealth by an act or omission outside th[e] Commonwealth." 42 Pa. Cons. Stat. Ann. 5322(a)(4). Personal jurisdiction may also be exercised over a non-resident to the fullest extent allowed under the United States Constitution. North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990); 42 Pa. Const. Stat. Ann. §§ 5301, 5322(b). Personal jurisdiction may arise from the non-resident defendant's "general contacts with the forum state, provided those contacts are 'continuous and systematic,' (general jurisdiction)." Travelers Indem. Co. v. TEC Am., Inc., 909 F.supp. 249,

251 (M.D. Pa. 1995).

"Specific jurisdiction exists when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Pennzoil Prod. Co., 149 F.3d at 200 (internal quotations omitted). To assert personal jurisdiction, a court must first determine whether the defendant had the minimum contacts with the forum to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297 (1980). Then, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corporation v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting International Shoe Company v. Washington, 326 U.S. 310, 320, (1945)).

Plaintiff Medical Technologies and Innovations, Inc.'s ("MTI") complaint alleges that Defendant Luxotica, a nonresident of Pennsylvania, directed its subsidiary, Defendant LensCrafters, to breach LensCrafters' contract with MTI, whose principle executive office is in Pennsylvania. It further alleged that Luxotica did so willfully and deliberately and in the knowledge that it was directing this allegedly tortious activity to the plaintiff located in Pennsylvania. Luxotica's craftily written and oft-repeated assertion that Luxotica "did not engage in communications with LensCrafters in the Commonwealth of Pennsylvania regarding any contractual relationship with MTI" hardly proves its point. Luxotica need not have been in Pennsylvania when it directed its action to Pennsylvania for the doctrine of specific jurisdiction to apply. What is important is that the action Luxotica is alleged to have taken was directed to Pennsylvania, whether Luxotica was in Italy or Ohio when it so acted. That is sufficient for Luxotica to have reasonably anticipated being haled into court here. World-Wide Volkwagon Corp., 444 U.S. at 297. (1980). It does not, therefore, offend "traditional notions of fair play and

2

substantial justice" to subject Luxotica to specific personal jurisdiction here. International Shoe Company v. Washington, 326 U.S. at 320; Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539 (3d Cir. 1985).

Although it need not, the Court also finds that defendant Luxotica is also subject to personal jurisdiction under the general jurisdiction theory. Although "[t]he standard for the assertion of general jurisdiction is much higher than that for the assertion of specific jurisdiction," it has been met here. Clark v. Matsushita Elec. Induc. Co., Ltd., 811 F.Supp. 1061, 1064 (M.D. Pa. 1993). The allegations in the complaint, and the submissions by both parties in the course of briefing this motion show that Luxotica, though its subsidiaries, carries on a sufficiently "continuous and systematic part of its general business within this Commonwealth" to subject it to personal jurisdiction under the general jurisdiction theory. Williamson v. Consol. Rail Corp., 712 F.Supp. 48, 50 (M.D. Pa. 1989). Bearing in mind the amount and nature of the business conducted in Pennsylvania, and the relationship to its subsidiaries, this Court finds that Luxotica "purposefully avail[ed] itself of the privilege of conducting business activities within the forum state, thus invoking the benefits and protection of its laws." Fields v. Ramada Inn, Inc., 816 F.Supp. 1033, 1036 (E.D. Pa. 1993).

## II   The Motion to Compel Arbitration and Stay the Case

Plaintiff and Defendant LensCrafters entered into their agreement in August of 1998. That agreement was memorialized in, inter alia, a Letter Agreement, two Purchase Orders with attached Terms and Conditions, and a Warrant Agreement. The documents were transmitted together as a packet governing their agreement, with the Letter Agreement serving as the cover document outlining the multi-faceted agreement

The Letter Agreement says that the "letter outlines the key provisions of [the] agreement

3

in addition to the standard terms and conditions of [the] Purchase Order and that certain Warrant Agreement, both as attached hereto." The Letter Agreement then summarizes, in eight numbered paragraphs, the terms of the agreement. Paragraph number one of the Letter Agreement describes the terms of MTI's sale to LensCrafters of MTI's Photoscreener machines. The same paragraph describes their agreement for a national campaign to market the Photoscreener – the subject of the instant litigation. The Letter Agreement itself contains no explicit choice of law or arbitration provisions.

The Warrant Agreement contains a choice of law provision which states that "[t]his Warrant shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida." MTI asserts that this language governs our choice of law in the analysis of the instant motion to compel arbitration. It does not. This choice of law provision, by its own terms, is limited to the Warrant. Although the warrants are in consideration of LensCrafters' performance of its marketing obligations under the agreement, its choice of law provision governs the warrants themselves and not the marketing agreement. Furthermore, even if Florida law did govern, the Federal Arbitration Act would preempt the Florida rule requiring voluntary arbitration. See Charson Steel Corp. v. Jewel Coal & Coke, 735 775 (3d Cir. 1984). See also, Doctor's Assoc., Inc., v. Casarotto, 517 U.S. 681 (1996); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 58-60 (1995).

The arbitration agreement which LensCrafters seeks to enforce is in the "LENSCRAFTERS PURCHASE ORDER TERMS AND CONDITIONS" document, which reads:

> **CHOICE OF LAW AND DISPUTE RESOLUTION**. This Agreement shall be governed by the laws of the State of Ohio.
> Any controversy relating to this Agreement or the transactions

4

> contemplated thereunder shall be submitted to binding arbitration in Cincinnati, Ohio in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.
>
> The decision of the arbitrator(s) and any award pursuant thereto shall be final, binding and conclusive evidence on the parties and shall be nonappealable. Final judgment on such decision any award [sic] may be entered by any court of competent jurisdiction.
>
> The arbitrator(s) may award the costs of the arbitration proceeding including, without limitation, reasonable attorney's fees, arbitrators' fees and out-of-pocket expenses incurred in connection with the arbitration hearing and all prehearing proceedings between the parties in such manner as the arbitrator(s) may determine to be reasonable and equitable in light of the outcome of the arbitration proceeding.

Term and Conditions, ¶ 19.

LensCrafters argues that this arbitration agreement applies to compel arbitration of this dispute arising out of the agreement for LensCrafters to market MTI's product. MTI asserts that the arbitration clause governs only disputes arising from LensCrafters' purchases of Photoscreeners. MTI avers that the purchase agreement was consummated and that their claim is a narrow one encompassing only the marketing agreement. The marketing agreement, says MTI, is described only in the Letter Agreement, which contains no arbitration clause. It concludes that it is therefore not compelled to arbitrate this dispute.

Because arbitration is "fundamentally a creature of contract," arbitrators have the authority to resolve disputes only if the parties have agreed to submit to arbitration. Medtronic Ave Inc. v. Advanced Cardiovascular Sys., 247 F.3d 44, 54 (3d Cir. 2001) (citation omitted). "If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration." PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990).

Here, there the parties agree that there is a valid arbitration agreement, the only issue is whether this dispute falls within its scope. In deciding the scope of the arbitration clause, this

5

Court is required to "apply ordinary contractual principles, with a healthy regard for the strong federal policy [of the Federal Arbitration Act] in favor of arbitration." John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). Because of this strong federal policy, courts must resolve all doubts about the scope of an arbitration agreement in favor of arbitration. See Medtronic, 247 F.3d at 55. Arbitration is presumed unless the Court has "positive assurance" that the arbitration agreement may not be interpreted to cover the dispute. PaineWebber, 921 F.2d at 511 (quoting AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)). However, as the Third Circuit has explained, the "positive assurance" standard is not unlimited:

> If "positive assurance" means "absolute certainty" -- i.e., that even slight interpretive doubt must be resolved in favor of arbitration -- then the district court committed clear error and its order must be overturned . . . . [B]ecause virtually all contractual language is susceptible to multiple interpretations and some doubt usually exists, such an extreme reading of the "positive assurance" requirement would force courts to refer almost all disputes over arbitration to the arbitrator, regardless of the parties' contractual intent. We think that such a result ultimately would disserve the very institution it purports to protect.

Id. at 512. Thus, "there is a limit as to how far a court should go in resolving a dispute in favor of arbitration because[,] . . . while interpretive disputes should be resolved in favor of arbitrability, 'a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt.'" Medtronic, 247 F.3d at 55 (citation omitted).

The Letter Agreement explicitly refers to the Terms and Conditions document which accompanied it, impliedly incorporating all its terms including the arbitration clause. Moreover, the arbitration section itself says that it applies to "[t]his Agreement." The Purchase Orders, and the terms and conditions document itself, use the term "Purchase Orders" when referring only to

the purchases. Therefore, the "Agreement" referred to in the arbitration clause must be the larger agreement between the parties, as summarized in the Letter Agreement, not merely the Purchase Orders part of the agreement. Lastly, the purchases are very closely related to the marketing campaign in that the purpose of the latter was to create and increase the market for the machines LensCrafters was buying via the Purchase Orders from MTI. There is little doubt that the scope of the arbitration agreement includes the present dispute. Given the "the strong federal policy [of the Federal Arbitration Act] in favor of arbitration," this Court finds that this dispute is arbitrable pursuant to the arbitration agreement. John Hancock Mut. Life Ins. Co., 151 F.3d at 137. See 9 U.S.C. § 2; PaineWebber, 921 F.2d at 511; Medtronic, 247 F.3d at 55.

**III     Conclusion**

Having determined that Luxotica is subject to personal jurisdiction here, and that the dispute between LensCrafters and MTI is subject to mandatory binding arbitration, this case is in something of a peculiar position. Luxotica has not asserted that MTI's claim against it is subject to the arbitration agreement between LensCrafters and MTI. Therefore, the claim against Luxotica is not compelled herein to arbitration. However, because MTI's claim against Luxotica is closely related to, and to some degree dependant upon, the claims against LensCrafters, this Court is disinclined to move this action along as against Luxotica only. Therefore, and as requested by LensCrafters, this entire action will be stayed pending arbitration of the dispute between MTI and LensCrafters. 9 U.S.C. § 3. The parties shall keep the Court informed as to the progress of arbitration.

IV    **Order**

    **IT IS THEREFORE ORDERED THAT** :

1)     Defendant Luxotica's motion to dismiss (Doc. No. 7) is **DENIED**.

2)     Defendant LensCrafters' Motion to Compel Arbitration and Stay the Case (Doc. No. 5) is **GRANTED**.

3)     The parties shall keep the Court informed of the progress of arbitration.

                                                                                               Yvette Kane
                                                                           United States District Judge

Date: March 28, 2002